IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**GREAT PLAINS ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, et al.,**<br><br>Defendants. | Case No. 6:21-cv-01197-HLT-KGG |

**MEMORANDUM AND ORDER**

This is a declaratory-judgment action concerning whether Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") is required to defend or indemnify Defendant Great Plains Annual Conference of the United Methodist Church in an underlying dispute between Great Plains and Defendant Juniper Payments. PIIC filed this case seeking a declaratory judgment that it does not owe coverage under two insurance policies it issued to Great Plains. Great Plains counterclaims that coverage exists under both policies.

The parties agreed to stay discovery so that PIIC and Great Plains could file cross motions for judgment on the pleadings. Docs. 17 and 19. The Court finds that Great Plains failed to give timely notice under the 2020 Policy and that PIIC is not required to show prejudice stemming from the untimely notice before denying coverage. Further no coverage is available under the 2021 Policy because no claim was made under that policy. Accordingly, the Court enters judgment on the pleadings in favor of PIIC and against Great Plains.

## I. BACKGROUND

### A. Dispute Between Great Plains and Juniper

The relevant facts are not in dispute. On July 15, 2020, Juniper sent a proposed tolling agreement to Great Plains. The tolling agreement related to a dispute that had arisen between Juniper and Great Plains about property that Juniper purchased from Great Plains. The proposed tolling agreement stated that "Juniper Payments discovered potential defects in the property for which it may seek recovery" and that the parties wished to permit Juniper to further investigate in hopes of avoiding litigation. A letter sent in December 2020 from Juniper to Great Plains further discussed the dispute.

Great Plains first provided PIIC notice of the dispute between Great Plains and Juniper on April 16, 2021. Juniper subsequently filed suit against Great Plains in state court on August 9, 2021. Juniper's state-court lawsuit was the subject of the tolling agreement sent to Great Plains in July 2020. In the state-court suit, Juniper asserts claims for negligent and fraudulent misrepresentation and breach of contract and alleges that Great Plains failed to disclose foundation work done on the property, including the existence of a warranty for the work done. Great Plains notified PIIC of the lawsuit on August 13, 2021.

### B. Insurance Policies Issued by PIIC to Great Plains

PIIC has issued two policies to Great Plains. One was in effect from January 1, 2020, to January 1, 2021 ("2020 Policy"). The other was in effect from January 1, 2021, to January 1, 2022 ("2021 Policy"). Relevant here, Great Plains purchased D&O Liability Insurance coverage in both policies. The parties don't dispute that the state-court suit between Great Plains and Juniper falls within the scope of the D&O Liability Insurance provision. But they dispute whether coverage under the policies was timely invoked.

Both the 2020 Policy and 2021 Policy state: "THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN." Doc. 1-4 at 14; Doc. 1-5 at 15; *see also* Doc. 1-4 at 30 and Doc. 1-5 at 31 (similar disclaimer). They further state that PIIC will pay "**Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy[.]" Doc. 1-4 at 30; Doc. 1-5 at 31.

The 2020 Policy[1] defines "Claim" as:

1. Any of the following:

    a. Any written demand for monetary or non-monetary relief (including injunctive); or

    b. Any civil proceeding, including any appeals therefrom, commenced by the filing, notice or service of compliant [sic], pleading, summons or similar document; or

    c. Any criminal proceeding, including any appeals therefrom, commenced by the return of an indictment or the filing of notice of charges or similar document; or

    d. Any formal administrative, judicial, regulatory or tribunal proceeding, including any proceeding before the Equal Employment Opportunity Commission or any similar governmental agency, commenced by the filing of notice of charges, formal investigative order, service of summons, subpoena or similar document; or

    e. Any arbitration, mediation or similar alternative dispute resolution proceeding commenced by receipt of a demand for such proceeding,

    Against an **Insured** for a **Wrongful Act**; or

---

[1] The parties discuss the following provisions in the context of the 2020 Policy. But it appears that the 2020 Policy and 2021 Policy are identical as to these provisions.

3

> 2. Any written request to toll or waive any statute of limitations applicable to any actual or potential suit or cause of action against an **Insured**.
>
> However, Claim shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.
>
> A **Claim** shall be considered made when an Insured first receives notice of the Claim.

Doc. 1-4 at 57-58. The policy further states:

> All Loss arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** . . . shall be deemed one **Loss** on account of one Claim . . . . Such **Claim** . . . shall be deemed to be first made or to have first occurred when the earliest of such **Claims** . . . were first made or first occurred.

*Id.* at 46. Interrelated Wrongful Act is defined as "any causally connected **Wrongful Act** or any series of the same, similar or related **Wrongful Acts**." *Id.* at 40. Under the policy,

> the **Insured** shall, as a condition precedent to the obligations of the **Underwriter** under this Policy, give written notice of such **Claim** . . . as soon as practicable to the **Underwriter** during this **Policy Period**, or, if applicable, during any Extension Period, but, not later than 60 days after the expiration date of this Policy or any Extension Period, if applicable.

*Id.* at 45. As explained above, the policy period for the 2020 Policy was January 1, 2020, to January 1, 2021. *Id.* at 14. If the policy period ended on a weekend or holiday, it was extended until the next day immediately following the weekend or holiday. *Id.* at 59. Under this provision, the 2020 Policy was extended until January 4, 2021. Sixty days after the expiration of the 2020 Policy was March 5, 2021. As noted above, Great Plains first provided notice to PIIC on April 16, 2021.

4

### C. Kansas Supreme Court Administrative Order Regarding COVID-19

As a result of the COVID-19 pandemic, the Kansas Supreme Court issued several administrative orders "suspending deadlines and time limitations." Doc. 5-1 at 2. Specifically, all deadlines, statutes of limitations, and time limitations were suspended beginning in March 2020 through April 14, 2021. *Id.* The deadlines and time limitations resumed April 15, 2021. *Id.*

## II. STANDARD

The Court evaluates motions for judgment on the pleadings under Rule 12(c) using the same standard that applies to motions for failure to state a claim under Rule 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). Under that standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In undertaking this analysis, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions or conclusory statements. *Id.* at 678-79. Judgment on the pleadings should be granted where there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).

## III. ANALYSIS

PIIC seeks declaratory judgment that there is no coverage under either the 2020 Policy or the 2021 Policy because Great Plains failed to provide timely notice of the claim based on its dispute with Juniper. Doc. 1 at 4-10.[2] Conversely, Great Plains asserts counterclaims seeking declaratory judgment that there is coverage under both the 2020 Policy and the 2021 Policy. Doc.

---

[2] PIIC alternatively seeks declaratory judgment that certain terms, conditions, and exclusions of the policies limit coverage. Doc. 1 at 10-11. But it only proceeds on this claim if the Court declines to enter judgment in its favor on its other claims that it owes no coverage under the 2020 Policy or 2021 Policy. Doc. 20 at 10-11.

5 at 10-12. The parties agreed to stay discovery in lieu of cross motions for judgment on the pleadings. *See* Docs. 13-14.

### A.     2020 Policy

The facts are not disputed. With regard to the 2020 Policy, the parties generally agree that Juniper sent Great Plains a request for a tolling agreement in July 2020. The request for a tolling agreement is considered a "claim" under the policy. Doc. 1-4 at 57-58.[3] But Great Plains did not notify PIIC of the claim until April 16, 2021, more than 60 days after the 2020 Policy expired. The primary legal dispute between PIIC and Great Plains is whether the late notice eliminates coverage under the 2020 Policy, or whether PIIC must demonstrate prejudice to avoid coverage.

The 2020 Policy is a so-called "claims-made policy." A claims-made policy differs from an occurrence policy in that a claims-made policy provides coverage only when a claim is made during the policy period, while an occurrence policy covers any occurrence that happens during the policy period, regardless of when the claim is made. *See Craft v. Philadelphia Indem. Ins. Co.*, 560 F. App'x 710, 711-12 (10th Cir. 2014); *see also* 13 Couch on Ins. § 186.13. The Kansas Supreme Court[4] has explained the difference:

> Under a claims-made policy, coverage is only triggered when, during the policy period, an insured discovers and notifies the insurer of either claims against the insured or occurrences that might give rise to such claims. This differs significantly from an occurrence policy, in which the coverage becomes effective if the negligent or omitted acts occur <u>during</u> the term of the policy. . . . In a claims-made policy, the notice is the trigger that invokes coverage.

*Am. Special Risk Mgmt. Corp. v. Cahow*, 192 P.3d 614, 621 (Kan. 2008).[5]

---

[3]   The Court separately addresses below Great Plains's contention that the tolling agreement should not be considered a claim under the policies.

[4]   The parties agree Kansas law governs. Doc. 18 at 10; Doc. 19-1 at 8.

[5]   Underscoring the fact that claims-made policies provide coverage for only a limited time period, the Kansas Supreme Court noted that such policies are generally written to exclude coverage for potential claims known to the insured before the policy's effective date. *Am. Special Risk Mgmt. Corp.*, 192 P.3d at 621. In other words,

To avoid liability under an occurrence policy based on untimely notice of an occurrence, an insurer generally must show prejudice. *See Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1101-02 (D. Kan. 1993). The parties dispute, however, whether this notice-prejudice rule applies to claims-made policies. Because this is a case brought under diversity jurisdiction and governed by Kansas substantive law, the Court must discern how the Kansas Supreme Court would decide this issue. *See Craft*, 560 F. App'x at 712.

Most federal cases to address this issue generally have found that the notice-prejudice rule does not apply to claims-made policies.[6] The few courts that have addressed this issue under Kansas law have agreed with the majority of courts that the notice-prejudice rule does not apply to claims-made policies. In *American Institute of Banking v. International Insurance Co.*, the court rejected the plaintiff's reliance on "broad statements" that an insurance company must always show prejudice to avoid liability because the plaintiff relied on authorities only involving occurrence policies. 1989 WL 7885, *2 (D. Kan. 1989). The court noted that, although Kansas courts had not addressed the question of whether an insurer must establish prejudice for late notice under a claims-made policy, other state courts have found that "such prejudice need not be shown." *Id.* The court ultimately concluded that the insurer "had no obligations under the policy after it

---

claims-made policies are generally designed to start on a clean slate and to end coverage at a specific time to limit risks to the insurer.

[6] *See, e.g.*, *Civic Assocs., Inc. v. Sec. Ins. Co.*, 749 F. Supp. 1076, 1082 (D. Kan. 1990) (rejecting under Missouri law argument that reporting requirement of claims-made policy should not be enforced absent actual prejudice to the insurer); *Craft v. Philadelphia Indem Ins. Co.*, 599 F. App'x 846, 847 (10th Cir. 2015) (finding after certification of question to Colorado Supreme Court that the notice-prejudice rule does not apply to claims-made policies); *Philadelphia Consol. Holding Corp. v. LSI-Lowery Sys., Inc.*, 775 F.3d 1072, 1078 (8th Cir. 2015) ("This Court and others interpreting Missouri law have long held that Missouri law does not require an insurer to show prejudice under a claims made policy."); *ALPS Prop. & Cas. Ins. Co. v. Unsworth LaPlante PLLC*, 526 F. Supp. 3d 23, 27 (D. Vt. 2021) ("Courts have frequently enforced the reporting requirement for claims-made-and-reported policies without imposing a further requirement of prejudice."); *Faithlife Corp. v. Philadelphia Indem. Ins. Co.*, 2020 WL 7385722, at *6 (W.D. Wash. 2020) ("The Court declines to apply the notice/prejudice rule to the claims-made [policies] at issue.").

expired" and the insured had not shown that enforcing the policy as written "would violate Kansas law or public policy." *Id.*

*LaForge v. American Casualty Co.*, a District of Kansas opinion, held that the "controlling factor [in claims-made policies] is whether the insurance company received actual notice of claims or potential claims within the policy period." 1992 WL 363677, at *3 (D. Kan. 1992). The court noted that "[c]ourts which have addressed claims-made policies have concluded that it is not necessary for the insurer to show prejudice to defeat coverage." *Id.* The Tenth Circuit affirmed, noting that a claims-made policy "differs significantly" from an occurrence policy because coverage under a claims-made policy is only triggered when the insured makes the insurer aware of a claim. *LaForge v. American Cas. Co.*, 37 F.3d 580, 583 (10th Cir. 1994). Timely notice is "crucial, because allowing actual notice beyond the policy period would 'constitute[] an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.'" *Id.* (quoting *Am. Cas. Co. v. Continisio*, 17 F.3d 62, 68 (3d Cir. 1994)). Claims-made policies are intended to provide more economical coverage because they allow an insurer to "close its books" on a policy at the end of its term. *Id.*; *see also Craft*, 560 F. App'x at 712-13 (noting that claims-made policies are often less expensive than occurrence policies because coverage is not open-ended).

Great Plains maintains that an insurer must show prejudice to avoid coverage. But the cases it cites for this general proposition do not appear to have been in the context of a claims-made policy, which is the key distinction. *See Civic Assocs., Inc.*, 749 F. Supp. at 1082 ("Additionally, plaintiff alludes to several Kansas and Missouri opinions in support of its argument . . . . However, because none of these cases refer to 'claims made' policies . . . we find that the cases are

8

inapposite."). Further, Great Plains's attempt to factually distinguish the cases discussed above is not persuasive. *See* Doc. 21 at 4.

Great Plains also relies in part on *Hunt v. Kling Motor Co.*, which it argues did apply the notice-prejudice rule to a claims-made policy. But although the insurer argued there was no coverage because the policy was a claims-made policy and no claim was made within the policy period, the court ultimately decided the case on the alternative argument that the insurer was, in fact, substantially prejudiced by the failure of the insured to provide timely notice of the lawsuit, regardless of the type of policy. *See Hunt*, 841 F. Supp. at 1101. *Hunt* did not directly address whether the notice-prejudice rule applies to claims-made policies. Also misplaced is Great Plains's reliance on *Phico Insurance Co. v. Providers Insurance Co.*, which focused on whether an insurer must show prejudice before denying coverage where the insured gives timely oral—but not the requisite written—notice, which the insurer then acts on. 888 F.2d 663, 669 (10th Cir. 1989). Here, it is undisputed that there was no notice <u>at all</u> to PIIC during the policy period for the 2020 Policy, which makes *Phico* of limited relevance.

Finally, Great Plains argues that public policy weighs in favor of requiring PIIC to offer coverage because forfeiture of insurance coverage is disfavored under Kansas law and allowing PIIC to avoid coverage without having been prejudiced would result in a windfall to PIIC. Doc. 21 at 8-10. These arguments do not persuade the Court to break with the overwhelming majority of courts who have "declined to apply the notice-prejudice rule to claims-made policies." *Craft*, 560 F. App'x at 712.

First, there is no "forfeiture" of coverage in this case. Because the policies are claims-made policies, the Kansas Supreme Court has clarified that "coverage is only triggered when, during the policy period, an insured <u>discovers and notifies the insurer</u> of either claims against the insured or

9

occurrences that might give rise to such claims." *Am. Special Risk Mgmt. Corp.*, 192 P.3d at 621 (emphasis added); *see also Civic Assocs., Inc.*, 749 F. Supp. at 1079 ("A 'claims made' or 'discovery' policy of insurance provides coverage for claims that are discovered and brought to the attention of the insurer during the term of the policy."). Because Great Plains did not notify PIIC of any claim or occurrence during the applicable policy period of the 2020 Policy, coverage was never invoked. If there was no coverage in the first place, there is no forfeiture. That was the bargained-for agreement, and such "policies do not offend public policy." *Civic Assocs., Inc.*, 749 F. Supp. at 1081.

Second, the Tenth Circuit has specifically addressed and rejected the concern that enforcing a notice provision in a claims-made policy would give the insurer a windfall. Notice is a central feature of a claims-made policy. Great Plains agreed to the terms of the policies, which provided that PIIC would only pay "**Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy[.]" Doc. 1-4 at 30; Doc. 1-5 at 31. "[E]xtending the insured's coverage without compensating the insurer would allow the insured to reap the windfall." *Craft*, 560 F. App'x at 713-14 (emphasis added).

Courts have noted the "conceptual differences between occurrence and claims-made liability policies" that have "important practical implications for the risks that insurers undertake and the premiums that insureds pay." *Craft v. Philadelphia Indem. Ins. Co.*, 343 P.3d 951, 957 (Colo. 2015). Application of a notice-prejudice rule to claims-made policies would effectively defeat the event that triggers coverage in the first place and disturb the parties' allocation of risk. *Id.* at 958-59; *see also Am. Special Risk Mgmt. Corp.*, 192 P.3d at 621 (explaining that courts should construe a policy as a whole and look to the language to ascertain the intent of the parties

10

while also considering "the situation of the parties, the nature of the subject matter, and the purpose to be accomplished"); *Civic Assocs., Inc.*, 749 F. Supp. at 1082 (explaining that allowing notice outside the policy period would fundamentally change the nature of the bargain). As the Tenth Circuit has noted, applying the notice-prejudice rule to claims-made policies could make them less available as an economical alternative to occurrence policies, and it could have contract-law implications because the notice in a claims-made policy is the central, bargained-for feature. *Craft*, 560 F. App'x. at 712-13. Further, the rationale behind the notice-prejudice rule does not apply with equal force to the date-certain notice requirement of a claims-made policy. *Craft*, 343 P.3d. at 961.[7]

The Court concludes that the Kansas Supreme Court would not apply the notice-prejudice rule to claims-made policies. Accordingly, it is undisputed that Great Plains did not notify PIIC of the claim until April 16, 2021. The policy period under the 2020 Policy ended on January 4, 2021. At the latest, Great Plains was required to notify PIIC within 60 days, or by March 5, 2021, to invoke coverage under the 2020 Policy. *See* Doc. 1-4 at 45. Because Great Plains failed to provide timely notice, and the notice-prejudice rule does not apply, there is no coverage available to Great Plains under the 2020 Policy.

### B.     2021 Policy

The parties also seek respective judgments in their favor about coverage under the 2021 Policy. Under the language of the policies,

> All Loss arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** . . . shall be deemed one **Loss** on account of one

---

[7] Claims-made policies can have two notice requirements. The first is that notice of a claim or event be given to the insurer promptly. The second is the requirement that notice be given during the policy period. *Craft*, 560 F. App'x at 715; *ALPS Prop & Cas. Ins. Co.*, 526 F. Supp. 3d at 28. Some courts have applied a notice-prejudice rule to the prompt-notice requirement, but not the policy-period notice requirement. *Craft*, 560 F. App'x at 715; *see also* 13 Couch on Ins. § 186.13. In this case, however, the distinction is immaterial because it is undisputed that the notice to PIIC fell outside the policy period.

> Claim . . . . Such **Claim** . . . shall be deemed to be first made or to have first occurred when the earliest of such **Claims** . . . were first made or first occurred.

Doc. 1-4 at 46; Doc. 1-5 at 47. In other words, the claim regarding the dispute between Juniper and Great Plains arose at the earliest claim event—the July 2020 tolling agreement. Because the 2021 Policy only covers "**Loss** from **Claims** made . . . during the **Policy Period**," Doc. 1-5 at 31, and the policy period for the 2021 Policy was January 1, 2021, to January 1, 2022, *id.* at 15, PIIC argues there is no coverage under the 2021 Policy either. Doc. 18 at 15-16. Based on the plain language of the policies, PIIC is correct.

Great Plains argues that the tolling agreement in July 2020 had no legal effect because the Kansas Supreme Court had already tolled the statute of limitations due to the COVID-19 pandemic. Doc. 21 at 6-8. Great Plains contends that because the tolling agreement had no legal effect, "it should be disregarded as a claim during that time period." *Id.* at 7. In other words, Great Plains suggests that the Court should ignore any impact of the tolling agreement under the policies and focus only on the notice Great Plains gave PIIC on April 16, 2021 (two days after expiration of the Kansas Supreme Court's administrative order). Great Plains argues the April 2021 notice would constitute timely notice of a claim under the 2021 Policy.

The Court is not persuaded. The July 2020-tolling-agreement request was a claim under the policies. *See, e.g.*, Doc. 1-4 at 58 (defining claim to include "Any written request to toll or waive any statute of limitations applicable to any actual or potential suit or cause of action against an **Insured**."). The Kansas Supreme Court's administrative order did not alter the terms of private contracts or eliminate Great Plains's bargained-for obligations. Nor does the fact that a tolling agreement was allegedly legally unnecessary change its significance under the policies. Legal effect plays no role in what constitutes a claim under the policy, as the policies define a claim to

12

include actions with no independent legal significance. *See id.* at 57-58 (defining a claim to include written demand letters and written requests to toll or waive a statute of limitations).

Accordingly, PIIC is entitled to judgment on the pleadings on its claim that there is no coverage under the 2021 Policy.

## IV. CONCLUSION

Based on the undisputed facts and the above analysis, the Court finds that judgment should be entered in favor of PIIC and against Great Plains on the issues of whether there is coverage under the 2020 Policy or 2021 Policy. Kansas law supports the ability to contract, and the Court will not inject additional terms. Because the Court finds that there is no coverage under the 2020 Policy or 2021 Policy, it does not reach PIIC's alternative argument that certain terms, conditions, and exclusions otherwise limit coverage.

THE COURT THEREFORE ORDERS that Plaintiff PIIC's Motion Seeking Entry of a Judgment on the Pleadings (Doc. 17) is GRANTED. Judgment is entered for PIIC on its claims that there is no coverage under either the 2020 Policy or 2021 Policy.

THE COURT FURTHER ORDERS that Defendant Great Plains's Motion for Judgment on the Pleadings (Doc. 19) is DENIED. Judgment is entered in favor of PIIC on Great Plains's counterclaims.

THE COURT FURTHER ORDERS that it does not reach PIIC's alternative claim that the terms, conditions, and exclusions otherwise limit coverage.

IT IS SO ORDERED.

Dated: February 22, 2022        /s/ *Holly L. Teeter*
                                                       HOLLY L. TEETER
                                                       UNITED STATES DISTRICT JUDGE